## James Monahan, Defendant in Error, v. W. O. Johnson, Receiver, Plaintiff in Error.

### Gen. No. 21,179.   (Not to be reported in full.)

Error to the Circuit Court of Cook county; the Hon. WILLIAM B. SCHOFIELD, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Reversed with finding of facts. Opinion filed February 1, 1916.

### Statement of the Case.

Action by James Monahan, plaintiff, against W. O. Johnson, receiver of the Chicago & Milwaukee Electric Railroad Company, defendant, to recover for personal injuries sustained in a collision between defendant's train and the dump cart on which plaintiff was riding when injured. To reverse a judgment for plaintiff for $2,500, defendant prosecutes this writ of error.

The declaration consisted of three counts. The first alleged, in substance, that on July 31, 1911, the defendant was in possession and control of and operating an electric railway running through Glencoe; that on said day the defendant was then propelling an electric car in a southerly direction at or near where the tracks intersected a public street, known as Scott avenue; that plaintiff was driving a team of horses and wagon on that street and across the tracks, and while he was in the exercise of ordinary care for his own safety the defendant so negligently managed the car that it ran into and struck plaintiff and the wagon, and plaintiff was thrown to the ground and was severely injured, etc. The second count set up an ordinance of the village requiring gates to be operated at the crossing and charged that defendant's negligent violation of the ordinance caused plaintiff's injury. The third count set up an ordinance limiting the speed of trains

to twelve miles per hour and charged the negligent violation thereof by defendant, etc. A plea of the general issue was filed, also a plea denying possession or operation by defendant. The evidence tended to show a violation of both ordinances, no gates being maintained or operated at the crossing, and that the speed of the car immediately prior to the collision was greater than twelve miles per hour.

It appears that Scott avenue, on the easterly side of the two parallel tracks of the railroad, runs in a north and south direction; and that the tracks run northwesterly and southeasterly, so that one approaching the tracks on Scott avenue from the north crosses the tracks diagonally. Northbound cars were run on the east track and southbound cars on the west track. On the westerly side of the tracks there is a turn in Scott avenue towards the west, and the street crosses the tracks of the Chicago & Northwestern Railroad Company substantially at right angles, which last named tracks are about seventy-five feet distant from the electric railroad tracks and run practically parallel therewith. For about three months prior to the accident plaintiff was employed as a teamster. He was about fifty-eight years of age and his hearing and eyesight were good. During the period of his employment he went over this crossing many times and was thoroughly familiar with it, and knew that the railroad company ran both express and local trains and that "express trains ran faster than the local trains." The accident happened about 1 p. m., July 31, 1911. It was a bright, clear day. The wagon was an ordinary dump wagon with no coverings over or around the seat. Plaintiff testified that as he approached the tracks from the north he was driving his team at a walk in the center of the road; that when about ten feet from the east track he stopped and looked both ways; that when he then looked north he could only see about seventy-

five feet up the west track and that he did not see any car or hear any whistle, and then started to cross and "kept looking all the time;" that when the horses were on the west track and the wagon on the east track he first saw the car; that it was then "right up against" him and that it struck the front wheel of the wagon, and that he knew nothing after that until he was helped upstairs to a doctor's office in Winnetka. It further appeared from the evidence that the train was an express train; that when it stopped, the rear end of the rear car was about in the center of the street. It appeared a person in the center of Scott avenue at a point nineteen feet east of said east track could see a car approaching from the north on the west track five hundred feet away, and that as a person moves nearer he can see a car at a greater distance. Several of plaintiff's witnesses testified as to the speed of the train and to not hearing any whistle immediately prior to the collision.

Defendant called as witnesses the motorman of the train which struck plaintiff, three of the passengers in the first car, and a young woman who was standing at some distance waiting for a car. It appeared that plaintiff was plainly seen from the train at a distance of from one hundred and fifty to two hundred feet, at which distance the motorman repeatedly blew the whistle, but, plaintiff paying no attention, started to stop the train. The witness who was waiting for a car testified that she called to plaintiff but plaintiff paid no attention, seeming to be asleep. This witness testified that plaintiff did not stop at any time or look up and down the track.

BULL & JOHNSON, for plaintiff in error.

RICHARD J. FINN, for defendant in error.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

Monahan v. Johnson, 197 Ill. App. 633.

## Abstract of the Decision.

1.  INTERURBAN RAILROADS, § 4*—*when person driving team over crossing guilty of contributory negligence.*  In an action to recover for injuries sustained by being struck by defendant's electric train while driving a dump cart across a crossing, where plaintiff just before reaching the crossing had an unobstructed view of the track for five hundred feet in the direction from which the train came, the accident occurring at about 1 p. m. on a clear day, there being also evidence that plaintiff was plainly seen from the train at a distance of two hundred feet before reaching the crossing, *held* that plaintiff was guilty of contributory negligence proximately contributing to his injury, although plaintiff testified that before starting to drive across the track he stopped and looked, seeing no train, since if plaintiff looked as he testified he must have seen the train.

2.  INTERURBAN RAILROADS, § 4*—*when failure to look and listen at crossing precludes recovery.*  It is the duty of one approaching an interurban railroad crossing on a highway to look and listen for approaching trains if a reasonably prudent person so situated would have looked and listened, and, under such conditions, failure to look and listen will preclude recovery where by looking and listening the injury would have been prevented, unless there were circumstances justifying such failure or unless the view was obstructed.

3.  INTERURBAN RAILROADS, § 4*—*when evidence that person before crossing track looked and did not see train, of no weight.*  A plaintiff in an action for personal injuries is not allowed to testify that he looked before starting to cross an interurban railroad track and saw no train where the view was unobstructed and where, if he had properly exercised his sense of sight, he must have seen the train.

McGOORTY, J., dissenting.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.